**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| SHANSHAN KONG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:23-cv-02405-TLP-atc |
| v. | ) | |
| | ) | |
| CHATHAM VILLAGE HOA, FAITH | ) | |
| MANAGEMENT & REALTY GROUP, | ) | |
| WAYNE MINK, and ESTATE | ) | |
| VENTURES, LLC. | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ADOPTING REPORT AND RECOMMENDATION**

In July 2023, pro se Plaintiff Shanshan Kong sued Defendants Chatham Village HOA ("Chatham Village"), Faith Management & Realty Group ("Faith Management"), Wayne Mink, and Estate Ventures, LLP ("Estate Ventures"). (ECF No. 1.) Soon after Plaintiff filed the lawsuit, Defendants Wayne Mink, Faith Management, and Estate Ventures moved to dismiss for lack of service of process. (ECF Nos. 11, 12, 15.) Plaintiff opposed the motions. (ECF Nos. 18, 19, 21.) After considering the motions, Magistrate Judge Annie T. Christoff ("Judge Christoff") entered a Report and Recommendation ("R&R") recommending that this Court give Plaintiff additional time to serve these three Defendants. (ECF No. 50.) The Court adopted Judge Christoff's R&R and gave Plaintiff another 21 days to serve the three Defendants. (ECF No. 61.) Plaintiff successfully served Defendant Wayne Mink. (ECF No. 65.)

Defendant Chatham Village then moved for summary judgment. (ECF No. 62.) Shortly after this motion, Plaintiff amended the Complaint without leave of Court. (ECF No. 64.)

Defendants then moved to strike the Amended Complaint. (ECF No. 67.) Defendants Estate Ventures and Faith Management also moved to dismiss Plaintiff's claims against them for lack of service. (ECF Nos. 69, 71.) Plaintiff opposed the motions to dismiss (ECF No. 75), and Defendants Faith Management and Estate Ventures replied (ECF Nos. 79, 80).

Judge Christoff then entered an R&R on the Motions to Dismiss and for Summary Judgment and an Order on the Motion to Strike and other pending motions. (ECF No. 96.) She recommended that the Court dismiss without prejudice Faith Management and Estate Ventures for lack of service. (*Id.*) Plaintiff objected to that portion of the R&R. (ECF No. 101.) Judge Christoff also denied Defendants' motion to strike, and so Plaintiff's Complaint filed on April 4, 2024, is now the operative Complaint. (ECF No. 96.) Accordingly, Judge Christoff recommended this Court deny without prejudice Defendant Chatham Village's Motion for Summary Judgment as moot. (*Id.*)

After Judge Christoff entered the R&R, Plaintiff moved for an extension of time to serve Defendants Faith Management and Estate Ventures.[1] (ECF No. 102.) These Defendants oppose the motion. (ECF No. 103.) Plaintiff then caused a summons to be reissued as to Defendant Estate Ventures. (ECF No. 110.) Defendant Estate Ventures moved to quash this summons, and Plaintiff opposed that motion. (ECF Nos. 112, 118.) In this Order, the Court considers the R&R, the Motion to Extend the Service Deadline, and the Motion to Quash.

For the reasons below, the Court **ADOPTS** the R&R, **GRANTS** the Motions to Dismiss (ECF Nos. 69, 71), **DENIES WITHOUT PREJUDICE** the Motion for Summary Judgment

---

[1] Plaintiff titled the document as "Plaintiff's Appeal on Dismissing defendants based on new proof of service." (ECF No. 102.) But as Plaintiff already filed objections to the R&R (ECF No. 101), the Court construes this as a motion to extend the deadline to serve Defendants.

(ECF No. 62.), and **DENIES** the Motion to Extend the Service Deadline and the Motion to

Quash as **MOOT** (ECF Nos. 102, 112).

The Court will now provide background information and then will set out the applicable

legal standards.

## **BACKGROUND**

Plaintiff sued Defendants in July 2023, but she has continuously failed to serve process

on Defendants Estate Ventures and Faith Management.  (ECF No. 1.)  After filing suit, Plaintiff

tried to serve Defendants Estate Ventures and Faith Management with certified mail.  But the

service was not adequate under either the Federal Rules of Civil Procedure or Tennessee Rules

of Civil Procedure, (collectively "the Rules").  The certified mail Plaintiff sent was not addressed

to any individual, much less an authorized agent for service of process, as required by Tennessee

Rule of Civil Procedure 4.04(10).  (ECF Nos. 7, 8.)  And none of the return receipts were signed

by a person authorized to accept service, as required by Tennessee Rules of Civil Procedure

4.03(2) and 4.04(10).[2]  (*Id.*)

And so in February 2024, after the failed service attempts, Judge Christoff entered a

R&R recommending that the Court grant Plaintiff an extension of time to serve these two

Defendants along with Defendant Wayne Mink.  (ECF No. 50.)  And that R&R thoroughly

explained how to use certified mail to serve process properly under Tennessee law.  (*Id.* at

PageID 1090–91.)  In March 2024, this Court adopted the R&R and gave Plaintiff twenty-one

days to serve these three Defendants.  (ECF No. 61.)  Plaintiff successfully served Defendant

---

[2] In the case of Estate Ventures, the return receipt was not signed.  (ECF No. 7.)  And as for
Faith Management, the return receipt was not signed by Kerry Satterfield, who is the only person
authorized to accept service for Faith Management.  (ECF No. 8.)

Mink.  But as explained below, she has still failed to serve Defendant Estate Ventures and Defendant Faith Management.

## LEGAL STANDARD

### I.    Service

The Federal Rules of Civil Procedure apply here.  And under Rule 12, a trial court may dismiss a complaint for failure to serve a party.  Fed. R. Civ. P. 12(b)(5).  "[W]ithout proper service of process, consent, waiver, or forfeiture, a court may not exercise personal jurisdiction over a named defendant."  *King v. Taylor*, 694 F.3d 650, 655 (6th Cir. 2012) (citing *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999)).  Proper due process must also exist for a court to "adjudicate the rights of the parties."  *Collins v. Waste Mgmt*, 2017 WL 6947871, at *2 (W.D. Tenn. Dec. 22, 2017), *report and recommendation adopted*, 2018 WL 445125 (W.D. Tenn. Jan. 14, 2018) (quoting *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 353 (6th Cir. 2003)).

And the plaintiff has the burden both to serve the defendants and then to show proper service of process.  *Sawyer v. Lexington-Fayette Urban Cnty. Gov't*, 18 F. App'x 285, 287 (6th Cir. 2001).  "Because the pleadings themselves will typically shed no light on service issues, motions to dismiss need not be treated as motions for summary judgment even if they are supported by affidavits or other evidence outside the pleadings."  *Boulger v. Woods*, 306 F. Supp. 3d 985, 993 (S.D. Ohio 2018), *aff'd*, 917 F.3d 471 (6th Cir. 2019) (citing *Sawyer*, 18 F. App'x at 287).

### II.    Report and Recommendation

A magistrate judge may submit to a district court judge proposed findings of fact and a recommended ruling on certain dispositive pretrial matters, including motions to dismiss.  28

4

U.S.C. § 636(b)(1)(A)–(B).  And the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]."  28 U.S.C. § 636(b)(1).  A party may object to the proposed findings and recommendations "[w]ithin 14 days after being served with a copy of the recommended disposition."  Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).  If neither party objects, then the district court reviews the R&R for clear error.  Fed. R. Civ. P. 72(b) advisory committee's note.  But if there is an objection, the district court reviews the objected-to portions of the R&R de novo.  Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

A party who objects must "be clear enough to enable the district court to discern those issues that are dispositive and contentious."  *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)).  In fact, "[o]verly general objections do not satisfy the objection requirement."  *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006) (citing *Miller*, 50 F.3d at 380), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007); *see also Slater v. Potter*, 28 F. App'x 512, 513 (6th Cir. 2002) ("The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." (citing *Miller*, 50 F.3d at 380)).  And so, when a plaintiff submits only vague, general, or conclusory objections, the district court may review the R&R for clear error, rather than de novo.  *See id.*  And the district court need not articulate all its reasons for rejecting a party's objection.  *See Tuggle v. Seabold*, 806 F.2d 87, 92 (6th Cir. 1986).

Judge Christoff entered her R&R, and Plaintiff timely objected.  (*See* ECF Nos. 40, 41, 44, 45.)  And so the Court reviews the R&R de novo.[3]

## DISPOSITION

Having reviewed the record here de novo, the Court agrees with Judge Christoff.  The Court therefore **ADOPTS** the R&R.  The Court first addresses the R&R on the motions to dismiss, then turns to the other pending motions.

**I.      Service of Process**

The Court will first explain how one may serve a limited liability company under the Rules.  And then the Court will walk through each of Plaintiff's service attempts since the Court's extension in March 2024 (ECF No. 61).

**A.      Service of a Limited Liability Company**

Both Defendant Estate Ventures and Defendant Faith Management are limited liability companies ("LLCs").  And so Federal Rule 4(h)(1) governs service of these Defendants.  *See Spencer v. Caracal Int'l, LLC*, 516 F. Supp. 3d 755, 758 (M.D. Tenn. 2021).  Under this Rule, a plaintiff may serve an LLC by providing the complaint and summons to a general or managing agent of the LLC or "any other agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(h)(1)(B).

The Federal Rules also permit a plaintiff to serve an LLC with the methods allowed by the Tennessee Rules of Civil Procedure.  *Id.*; Fed. R. Civ. P. 4(e)(1).  This means that a plaintiff may use "registered return receipt or certified return receipt mail" to carry out service.  Tenn. R.

---

[3] Arguably, there are parts of the R&R to which Plaintiff did not properly object.  For example, at one point, Plaintiff seems to agree that good cause does not exist to extend the service deadline.  (ECF No. 101 at PageID 1996 ("There was nothing like that here.")).  But in other parts of her objections, Plaintiff argues there is good cause to extend the deadline.  (*Id.*)  Airing on the side of caution, the Court will review the entire R&R de novo.

Civ. P. 4.04(10). But this method works only if the plaintiff addresses the certified mail to a general or managing agent of the LLC or to an "agent authorized by appointment or by law to receive service on behalf of the [LLC]." Tenn. R. Civ. P. 4.04(3). And a person authorized to accept service must sign the return receipt. *Hall v. Haynes*, 319 S.W.3d 564, 583–84 (Tenn. 2010).

This Court's earlier order gave Plaintiff a twenty-one-day extension to serve Defendants Estate Ventures and Faith Management, meaning Plaintiff needed to serve these Defendants on or before April 9, 2024. (ECF No. 61.) As for Defendant Estate Ventures, Plaintiff could have served Justin Reed, who is Estate Venture's sole member. (ECF No. 69-2 at PageID 1671.) Or, during the relevant time, she could have served Estate Venture's registered agent, who was J. Clay Cole. (*Id.* at PageID 1672.) On April 17, 2024, after the service deadline passed, Estate Ventures changed its registered agent to Justin Reed. (*Id.*) In an affidavit, Mr. Reed explains that he "was very careful not to make the change until time for Ms. Kong to make service upon Estate Ventures had expired." (*Id.*) As for Defendant Faith Management, Plaintiff's only option was to serve Kerry Satterfield, who is Faith Management's sole member and registered agent. (ECF No. 71-2 at PageID 1699.)

The Court will now describe Plaintiff's service efforts between March 19, 2024—the date the Court granted Plaintiff a service extension—and August 30, 2024, the date Judge Christoff entered her R&R recommending the Court dismiss Defendants Estate Ventures and Faith Management for lack of service.

### B.    Defendant Estate Ventures

Starting with Defendant Estate Ventures, Plaintiff's process server tried to serve Justin Reed personally at his home four times: on March 28, 2024, March 30, 2024, April 1, 2024, and

April 5, 2024. (ECF No. 66.) Although these dates fell within the twenty-one-day window the Court gave Plaintiff to complete service, Plaintiff's process server did not serve Mr. Reed. (*Id.*) Nothing in the record reflects whether Plaintiff tried to serve Mr. Cole during the twenty-one day period, despite him being the registered agent at the time. (*Id.*; ECF No. 68.) Likewise there is no evidence that Plaintiff tried to serve Estate Ventures with certified mail during the twenty-one day window. (ECF Nos. 66, 68.)

After the service deadline passed, Plaintiff tried again to serve Estate Ventures. On April 18, 2024, Plaintiff tried to serve Mr. Cole. (ECF No. 68.) But Plaintiff could not perfect service, both because it was untimely and because, by that point, Mr. Cole was no longer Estate Ventures' registered agent. (ECF No. 69-2.) Next, on May 8, 2024, Plaintiff tried to serve Mr. Baskind, Defendant Estate Venture's attorney in this case. (ECF No. 78.) But again, Plaintiff did not perfect service with this attempt both because the service attempt was untimely and nothing in the record suggests Mr. Baskind could accept service. *See Malibu Media, LLC v. Doe*, No. 1:14-cv-493, 2015 WL 268995, at *3 (S.D. Ohio Jan. 21, 2015); *Arthur v. Litton Loan Servicing LP*, 249 F. Supp. 2d 924, 930 (E.D. Tenn. 2022).

C.    **Defendant Faith Management**

1.    **Service of Process**

As for Defendant Faith Management, Plaintiff proved that she tried to serve Faith Management once after the Court's extension. On March 26, 2024, Plaintiff's process server delivered the service materials to Karen Parker. (ECF No. 65-1 at PageID 1628–29.) According to the process server's affidavit, Karen Parker is "lead accounting" for Faith Management and "Kerry Satterfield asked Karen Parker to accept service." (*Id.*) The process server also emailed Plaintiff about this service attempt. (ECF No. 75 at PageID 1723.) The email stated: "No, she

was not in the office but was contacted by phone.  She said she was expecting the paper and asked for sub service." (*Id.*)

In an affidavit, Kerry Satterfield explains this event differently.  Ms. Satterfield claims that she never asked Karen Parker to accept service on her behalf.  As Ms. Satterfield explained, "When I spoke to Ms. Parker, the process server had already given Ms. Parker the documents and she had signed.  I instructed her to have him simply leave the documents." (ECF No. 71-2 at PageID 1700.)  Ms. Satterfield further stated, "I never authorized Ms. Parker to accept service on [behalf of] Faith Management and Realty Group, LLC.  My understanding was that only I could accept service." (*Id.*)

Judge Christoff concluded that this service attempt was inadequate.  But Plaintiff objected to that conclusion, arguing that she served "Faith [M]anagement by giving a brown envelop to a person in Faith [M]anagement's office and sending a copy of the summons and complaint by certified mail to Faith [M]anagement's main corporate office." (ECF No. 101 at PageID 1999 (internal quotations omitted).)  And in her objections, Plaintiff relies on *Metro. Alloys Corp. v. State Metals Indus., Inc.*, 416 F. Supp. 2d 561, 564 (E.D. Mich. 2006) to support her position.

### 2.    Analysis of Service Attempt

But for the reasons below, the Court overrules Plaintiff's objection here and agrees with Judge Christoff.  First, Plaintiff has produced no evidence that she has served Defendant Faith Management by certified mail in a way that complies with Tenn. R. Civ. P. 4.04.

Second, the Court finds that Plaintiff failed to serve Defendant Faith Management when she tried to serve Ms. Parker.[4]  According to Plaintiff, service was proper since Ms. Satterfield asked for "sub service" through Karen Parker.  ((ECF No. 75 at PageID 1723.)  As Judge Christoff explained, Plaintiff's argument here rests on agency principles.  (ECF No. 96 at PageID 1941.)  In essence, Plaintiff argues that Ms. Satterfield gave Ms. Parker actual or apparent authority to accept service of process on behalf of Faith Management.  (*Id.*)

"[A]n agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Black v. SunPath, Ltd.*, No. 3:21-cv-00023, 2022 WL 4241270, at *3 (M.D. Tenn. Sept. 14, 2022) (quoting *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 373 (6th Cir. 2015)).  As for apparent authority, it arises when the "'principal holds out another as possessing certain authority, thereby inducing third parties reasonably to believe, that such authority exists even when it does not.'"  *McCombs v. Granville Exempted Vill. Sch. Dist.*, No. 2:07-CV-00495, 2009 WL 467066, at *5 (S.D. Ohio Feb. 24, 2009) (quoting *Select Creations Inc. v. Paliafito Am., Inc.*, 830 F. Supp. 1223, 1235 (E.D. Wis. 1993)).

When either actual or apparent authority is at issue, "[a]gency must be proven by the party seeking to assert it and the 'scope and extent of an agent's real and apparent authority' must 'be determined . . . from all the facts and circumstances in evidence.'"  *Farmer v. S. Parkway Assocs., L.P.*, No. W2012-02322-COA-R3-CV, 2013 WL 5424653, at *5 (Tenn. Ct.

---

[4] The Court notes that Plaintiff needed to serve Defendant Faith Management in accordance with Rule 4 of the Federal Rules of Civil Procedure.  Plaintiff argued to Judge Christoff that her service attempt was proper under Rule 5.  But as Judge Christoff explains, Plaintiff's Rule 5 argument is plainly wrong.  Rule 5 applies to service of pleadings and other papers *after* the initial complaint.  Fed. R. Civ. P. 5.  This rule does not apply to service of process.

App. Sept. 25, 2013) (quoting *John J. Heirigs Const. Co., Inc. v. Exide*, 709 S.W.2d 604, 608 (Tenn. Ct. App. 1986); *Sloan v. Hall*, 673 S.W.2d 548, 551 (Tenn. Ct. App. 1984)). And, under Tennessee law, "there must be evidence that the principal *specifically intended* to confer authority on the agent to receive and accept service of process on its behalf." *JPW Indus., Inc. v. Woodworkers Supply, Inc.*, No. 3:20-CV-00086, 2021 WL 2869242, at *4 (M.D. Tenn. July 8, 2021) (citing *Meersman v. Regions Morgan Keegan Trust*, No. M2017-02043-COA-R3-CV, 2018 WL 4896660 at *4-5 (Tenn. Ct. App. Oct. 9, 2018)). Likewise, "[a]uthority to accept service of process cannot be established by acting as an agent of the principal for some other purpose or by the mere fact of actual acceptance of service of process by the alleged agent." *Id.* (citing *Meersman*, 2018 WL 4896660 at *4-5).

Accordingly, it is Plaintiff's burden to prove service and that Faith Management had authorized Karen Parker to accept service. And the Court finds that Plaintiff has failed to carry her burden here. In other words, Plaintiff has not convinced the Court that Ms. Parker had actual or apparent authority to accept service for Faith Management.

In his service affidavit, Plaintiff's process server states that "Kerry Satterfield asked Karen Parker to accept service," and his unsworn email clarifies that Ms. Satterfield "was not in the office but was contacted by phone. She said that she was expecting the paper and asked for sub service." (ECF No. 65-1 at PageID 1628; ECF No. 75 at PageID 1723.) But the process server's description lacks details. (ECF No. 65-1 at PageID 1628; ECF No. 75 at PageID 1723.) He never claimed to be part of the phone call and does not explain how he knew this information. (ECF No. 65-1 at PageID 1628; ECF No. 75 at PageID 1723.) And whether an agent has actual authority rests on what the agent reasonably believes based on her interactions with the *principal*. *See McCombs*, 2009 WL 467066, at *5. But the process server has not

claimed to have spoken with the principal here.  (ECF No. 65-1 at PageID 1628; ECF No. 75 at

PageID 1723.)  And so Plaintiff cannot establish that Ms. Parker had apparent authority.

Plaintiff also fails to show that Ms. Parker had actual authority to accept service.  Ms.

Satterfield and the process server differ over Ms. Parker's authority to accept service.  (*Compare*

ECF No. 71-2, *with* ECF No. 65-1 at PageID 1628, *and* ECF No. 75 at PageID 1723.)  But Ms.

Satterfield, who was undisputedly part of the phone call, gives the fuller account.  (ECF No. 71-

2.)  Under Ms. Satterfield's version of events, Ms. Parker lacked authority to accept service.

And tellingly, after Defendant Faith Management filed Ms. Satterfield's affidavit, Plaintiff did

not try to rebut the affidavit.  Plaintiff could have provided a more complete statement from her

process server, or Plaintiff could have tried to gain information from Ms. Parker about the phone

call or chain of events.  But she did neither.  And so, in sum, the Court finds that Plaintiff has

failed to show that Ms. Parker had actual authority to accept service.

And lastly, Plaintiff's reliance on *Metro. Alloys Corp.* in her objections is misplaced.  416

F. Supp. 2d 561.  In *Metro. Alloys Corp.*, the plaintiff's affidavit explained that she had

completed service.  *Id.* at 563–64.  And the defendant did not provide any evidence showing

otherwise.  *Id.*  ("Based on [the plaintiff's] uncontested affidavits, [the plaintiff] has met its

burden of demonstrating the validity of service of process upon [the defendant].")  But that is

not the situation here.  This case involves competing affidavits, and Ms. Satterfield's affidavit is

more complete.

As Plaintiff has failed to serve both Defendant Estate Ventures and Defendant Faith

Management, the Court will now consider whether there is good cause to give Plaintiff

additional time to serve these Defendants.

## II.    Good Cause

Federal Rule of Civil Procedure 4(m) provides that 'if the plaintiff shows good cause for the failure," to timely serve a defendant, "the court must extend the time for service for an appropriate period."  While Rule 4(m) does not define good cause, "'good cause' generally means 'a reasonable, diligent effort' at proper service."  *Siffert v. Sport Pontoons, LLC*, No. 1:22-CV-272-KAC-CHS, 2023 WL 5321080, at *3 (E.D. Tenn. Apr. 3, 2023) (quoting *Johnson v. Smith*, 835 F. App'x 114, 115 (6th Cir. 2021)).  A plaintiff shows good cause when "something outside the plaintiff's control prevents timely service," such as when a defendant evades service.  *Savoie v. City of E. Lansing, Michigan*, No. 21-2684, 2022 WL 3643339, at *4 (6th Cir. Aug. 24, 2022).  Plaintiffs bear the burden to show good cause.  *Id.*

As Judge Christoff correctly explains, Plaintiff has not shown good cause to extend the deadline to serve either Defendant Estate Ventures or Defendant Faith Management.  Plaintiff objects to Judge Christoff's R&R and asserts that there is good cause to extend the deadline because, as she argues, (1) "Justin Reed is evading service," (2) Plaintiff made plenty of efforts to try to serve Estate Ventures LLC properly," and (3) "Plaintiff has submitted adequate amount of evidence to support her claims against Estate Ventures LLC."[5]  (ECF No. 101 at PageID 1997.)  But the Court does not find Plaintiff's objections persuasive, and as explained below, the Court agrees with Judge Christoff's analysis.

---

[5] It is unclear whether Plaintiff objects to Judge Christoff's good cause analysis or discretionary extension analysis (ECF 101 at PageID 1997), but either way, the objections fail.

### A.    Defendant Estate Ventures

### 1.    Service Attempts Before the R&R

After the Court extended the service deadline, Plaintiff tried to serve Estate Ventures four

times through personal service on Justin Reed.  And even though Plaintiff did not serve Mr. Reed

during these four tries, Plaintiff has not shown that he was evading service.[6]  *Harcrow v.*

*Harcrow*, No. 3:18-CV-00828, 2020 WL 8455159, at *6 (M.D. Tenn. Sept. 10, 2020), *report*

*and recommendation adopted*, No. 3:18-CV-00828, 2021 WL 396704 (M.D. Tenn. Feb. 4, 2021)

("Although it is true, as [Plaintiff] argues, that the 'docket is replete with evidence of [her] many

attempts to serve …. [Defendant],' that is not, by itself, sufficient to show good cause.").

Plaintiff also tries to argue that Estate Ventures was evading service because it changed its

registered agent.  (ECF No. 101 at PageID 1996.)  But the Court finds this position unpersuasive

because Estate Ventures changed its registered agent only after Plaintiff's service deadline

passed.  (ECF No. 69-2 at PageID 1672.)

What is more, the Court is not convinced that Plaintiff has made "plenty efforts" to try to

serve Estate Ventures as she claims.  Plaintiff had many ways she could properly serve Estate

Ventures (such as by service on Mr. Cole or by certified mail), but after the Court's extension,

she focused only on trying to personally serve Mr. Reed.  And after Plaintiff was unable to serve

Estate Ventures, she did not ask for an extension until after Judge Christoff recommended

---

[6] And the fact that there was a car parked at Mr. Reed's home during one of the service attempts
does not change this Court's conclusion.  (ECF No. 66 at PageID 1631, 1633.)  For one, and as
Judge Christoff points out, the car has a Mississippi license plate and Mr. Reed lives in
Tennessee.  (*Id.*; ECF No. 96 at PageID 1935.)  In her objections, Plaintiff argues that this cannot
rule out Mr. Reed owning the car as Tennessee and Mississippi are close.  (ECF No. 101 at
PageID 1996.)  But Plaintiff provides no proof this was Mr. Reed's car.  (*Id.*)  And, in any event,
even if it were Mr. Reed's car, that does not necessarily mean he was at home.

dismissal of her claims for lack of service. (*See* ECF No. 102.) In sum, Plaintiff has not shown good cause to extend the deadline to serve Defendant Estate Ventures.

### 2.    New Evidence

When Plaintiff objected to Judge Christoff's R&R, she offered four pieces of "new evidence," which she argues show evasion on the part of Estate Ventures. (ECF No. 101 at PageID 1998; ECF No. 101-1; ECF No. 101-2.) But the Court declines to exercise its discretion to consider this "new evidence." *Muhammad v. Close*, No. 08-1944, 2009 WL 8755520, at *2 (6th Cir. Apr. 20, 2009) ("[D]istrict courts have the discretion, though they are not required, to consider evidence presented for the first time in a party's objections to a magistrate judge's report.").

First, Plaintiff explains, and provides proof, that she tried to serve Estate Ventures by certified mail in July 2023 and October 2023. (ECF No. 101-1 at PageID 2001–03.) But this is not new evidence. This evidence concerns service attempts Plaintiff made at the very beginning of this lawsuit and before the Court granted an extension. And so Plaintiff had this evidence, but did not make arguments based on it, when she responded to the motions to dismiss currently under review. (ECF No. 75.) And so the Court need not consider the evidence about these attempts here. In any event, the evidence does not show evasion on part of Estate Ventures. Instead, it shows that Plaintiff did not address the envelops properly and her lack of regard for the Rules on service of process. (*See* ECF No. 101-1 at PageID 2002.)

Plaintiff also claims that Mr. Reed changed the mailing address of Estate Venture's registered agent to a P.O. Box, where Plaintiff claims "nobody will receive the service paper." (ECF No. 101-1 at PageID 2004.) The only evidence Plaintiff gives for this claim is a screenshot of a webpage that shows Estate Venture's mailing address is a P.O. Box. (*Id.*) But this is not

new evidence.[7]  This was Estate Venture's mailing address at the time Judge Christoff entered

her R&R.  (*See* ECF No. 69-2 at PageID 1673.)  What is more, Plaintiff provides no proof to

support her claim that certified mail could not be sent to this P.O. Box.  (*Id.*)  And so the Court

refuses to exercise its discretion to consider this evidence.  In any event, the evidence would not

change the Court's conclusion.

Third, Plaintiff argues that Estate Ventures "does not maintain business in its registered

office (2763 Colony Park Dr, Memphis)."  (ECF No. 101-1 at PageID 2004.)  In support of her

claim, she provides proof that, after Judge Christoff entered her R&R, Plaintiff tried to serve Mr.

Reed two times at 2763 Colony Park Dr, Memphis, TN.  (ECF No. 101-1 at PageID 2004.)  And

referring to the second attempt, the process server stated in an affidavit, "owner of building

stated defendant doesn't work on property they just rent out unit for people to use."  (*Id.*)

First, this point is irrelevant, because, as Plaintiff's evidence shows, Estate Ventures

registered office was not 2763 Colony Park Dr. during the time Plaintiff could validly serve

Estate Ventures.  (*See* ECF No. 101-2 at PageID 2010.)  In fact, the proof shows that Estate

Venture's principal's address and registered agent's address became 2763 Colony Park Dr. on

April 17, 2024.  (*Id.*)  And so the Court declines to consider this new evidence.

Besides, during the time that Plaintiff could have validly served Estate Ventures, Mr.

Cole was the registered agent, not Mr. Reed.  And so she could have served either Mr. Cole or

Mr. Reed during her service window.  And Plaintiff has made no showing that Mr. Cole was

unreachable when he was the registered agent.  (ECF Nos. 75, 101.)

---

[7] Plaintiff has also not produced evidence of when this alleged change occurred.  Plaintiff has
shown that Estate Venture's registered agent and principal address changed on April 17, 2024—
after her service deadline passed.  (ECF No. 101-2 at PageID 2010.)  But Plaintiff has not shown
that this is when Estate Venture's mailing address changed, that is, if the mailing address
changed at all.  (*Id.* at PageID 2009–10.)

Plaintiff's final piece of new evidence shows that Plaintiff tried, but failed, to serve Mr.
Reed three times at his home after Judge Christoff entered the R&R.  (ECF No. 101-1 at PageID
2005.)  The Court also declines to consider this new evidence.  Plaintiff should have made these
additional attempts before the deadline to serve ran out.  Or she should have requested an
extension in April 2024 and then, if granted, tried to serve Estate Ventures again.  It is also
impossible that Defendant Estate Ventures was evading service during a time when Plaintiff
could not validly serve Estate Ventures.  In sum, these new attempts at service are untimely, and
the Court declines to consider them.

### 3.    Strength of Claims

Plaintiff also objects to the R&R and asserts there is good cause to extend the service
deadline because, as she asserts, her claims against Estate Ventures are supported.  (*See* ECF No.
101 at PageID 1997.)  The Court finds this argument unconvincing.  Whether or not Plaintiff's
claims are strong, she must perfect service, and the Court has already given her ample time to do
so.  Indeed, "without proper service of process, consent, waiver, or forfeiture, a court may not
exercise personal jurisdiction over a named defendant."  *King v. Taylor*, 694 F.3d 650, 655 (6th
Cir. 2012) (citing reference omitted).

### B.    Faith Management

Plaintiff has also failed to show good cause to extend her deadline to serve Defendant
Faith Management.  She points to no evidence suggesting this Defendant was trying to evade
service.  (ECF Nos. 75; 101-1.)  To the contrary, Plaintiff tried to serve this Defendant only once
after the Court extended her service deadline.  (*See* ECF No. 65-1 at PageID 1627.)  And for the
reasons explained above, that service attempt was ineffective.

Unlike with Defendant Estate Ventures, Plaintiff fails to present any evidence that Defendant Faith Management has evaded service. (ECF No. 101.) And so the Court will now turn to assess whether it should, in its discretion, extend Plaintiff's deadline to serve Defendants Estate Ventures and Faith Management.

## III.    Discretion

As Judge Christoff correctly explains, even without good cause, the Court may still extend the service deadline. Judge Christoff recommended that this Court decline to use its discretion to extend the service deadline. (ECF No. 96 at PageID 1937, 1945.) Plaintiff objected to this recommendation. (ECF No. 101 at PageID 1996–97.) In her objections, Plaintiff explains that she is pro se and does not live in the United States. (*Id.* at PageID 1996.) Plaintiff also argues that Estate Ventures is evading service and that she acted diligently in her service attempts after the Court extended the deadline in March 2024.[8] (*Id.* at PageID 1996–97.)

For the reasons below, the Court overrules Plaintiff's objections. The Court agrees with Judge Christoff and declines to use its discretion to extend the service deadline.

When deciding whether to exercise this discretion, courts look to seven factors:

(1) whether an extension of time would be well beyond the timely service of process; (2) whether an extension of time would prejudice the defendant other than the inherent prejudice in having to defend the suit; (3) whether the defendant had actual notice of the lawsuit; (4) whether the court's refusal to extend time for service substantially prejudices the plaintiff, i.e., would the plaintiff's lawsuit be time-barred; (5) whether the plaintiff had made any good faith efforts to effect proper service of process or was diligent in correcting any deficiencies; (6) whether the plaintiff is a pro se litigant deserving of additional latitude to correct defects in service of process; and (7) whether any equitable factors exist that might be relevant to the unique circumstances of the case.

---

[8] For the same reasons explained in the "good cause" section of this Order, the Court finds that she has not shown that Estate Ventures was evading service or that Plaintiff acted diligently.

*United States v. Oakland Physicians Med. Ctr., LLC*, 44 F.4th 565, 569 (6th Cir. 2022). None of

these factors are dispositive. *Id.* This Court has reviewed de novo Judge Christoff's analysis of

these factors and agrees with her conclusion that the Court should not extend the service deadline

as it relates to either unserved Defendant.

As Judge Christoff explains, the first, second, fifth, and seventh factors point to not

extending the service deadline. The first factor—whether an extension of time would be well

beyond the timely service of process—strongly favors not extending the service deadline.

Indeed, Plaintiff first sued these Defendants in July 2023, and service of process is still an issue.

As for the second factor, extending the deadline again would prejudice Defendants Estate

Ventures and Faith Management more than is inherit in defending a suit. Indeed, if the Court

extended the deadline, the unserved Defendants would either quickly need to catch up to the

served Defendants in this case (who have already moved for summary judgment) or the served

Defendants would face further delays in resolving the suit against them. Neither of these

outcomes would be fair given (1) the unserved Defendants have been unsure for a long time

whether Plaintiff would ever successfully serve them and (2) this case has already had delays in

part due to leniency toward Plaintiff.[9]

The fourth factor, which assesses Plaintiff's service attempts, counsels against allowing

additional time to serve the Defendants. Plaintiff has made some good-faith efforts to serve the

Defendants. Mainly, after the Court extended the deadline, Plaintiff hired a process server and

tried to serve Estate Ventures through personal service on Justin Reed four times. (*See* ECF No.

---

[9] Indeed Plaintiff has already been given a service extension. (ECF No. 61.) And Judge
Christoff did not strike her amended complaint that she filed without leave of Court on April 4,
2024. (ECF Nos. 64, 96.)

66.)  But Plaintiff's lack of diligence, and repeated disregard for the service rules, outweighs her good-faith attempts at service.

During the added time the Court gave her to serve, Plaintiff tried to serve Estate Ventures only through personal service on Justin Reed.  (*See id.*)  She did not try to deliver the service materials to Mr. Cole,[10] the registered agent at the time, nor did she try to serve Estate Ventures by certified mail.  And as it relates to Defendant Faith Management, her only attempt involved trying to serve an individual not authorized to accept service.

Then, as the service deadline approached, Plaintiff did not proactively ask for an extension.  Instead, she made continued attempts to serve Estate Ventures.  And these attempts further show Plaintiff's lack of regard for the Rules.  Indeed, Plaintiff tried to serve Estate Venture's attorney without any basis to do so.  (*See* ECF No. 78.)

The seventh factor also supports not extending the service deadline.  This is because the lack of service is largely of Plaintiff's own creation.  *See Savoie v. City of East Lansing, Mich.*, No. 21- 2684, 2022 WL 3643339, at *5 (6th Cir. Aug. 24, 2022).  As explained in the paragraphs above, Plaintiff had many ways she could serve these Defendants.  But she repeatedly tried to serve with the same method, made errors in service, did not proactively ask for an extension, and tried a method not allowed by the Rules.

On the other hand, and as Judge Christoff points out, the third, fourth, and sixth factors weigh slightly in favor of extending the service deadline.  To begin, factor three supports extending the service deadline.  Indeed, Defendants, without question, know about this lawsuit.

---

[10] She only tried to serve Mr. Cole after her service deadline and after he was no longer the registered agent.

As for the fourth factor, the Court's decision to not extend the deadline will prejudice Plaintiff as some of her claims will be time barred. But even so, this does not require the Court to extend the service deadline. *Oakland Physicians Med. Ctr., LLC*, 44 F.4th at 570 ("[T]he running of the statute of limitations does not *require* a court to grant a discretionary extension." (emphasis in original)). What is more, not all of Plaintiffs' claims against the unserved defendants will be time barred.[11] So even though this factor favors extension, it only somewhat tilts that way. And this Order dismisses only Defendants Estate Ventures and Faith Management from the lawsuit, meaning Plaintiff can still pursue the claims she has against the remaining Defendants, Wayne Mink and Chatham Village.

Lastly, and as Plaintiff points out in her objections, she is pro se. (ECF No. 101 at PageID 1996.) So the sixth factor also favors extending the deadline for service. Even so, Plaintiff has shown she is a capable pro se litigant, and the Court extended the service deadline for Plaintiff earlier in this case. In fact, Judge Christoff has explained to Plaintiff how to serve an LLC using certified mail under Tennessee law. (ECF No. 50 at PageID 1090–91.) And in the end, the latitude given to pro se plaintiffs has limits.

All in all, the factors do not support granting Plaintiff any further extension to perfect service. Accordingly, the Court **GRANTS** Defendant Estate Ventures and Defendant Faith Management's Motions to Dismiss (ECF Nos. 69, 71.) and **DISMISSES WITHOUT**

---

[11] Plaintiff's claim that Defendant Estate Ventures violated Tennessee forcible-entry-and-detainer laws may not be time barred under Tennessee's three-year statute of limitations applicable to torts against property. *See* Tenn. Code Ann. § 28-3-105. And, likewise, Plaintiff's breach of contract claim against Defendant Faith Management may not be time barred under Tennessee's six-year statute of limitations applicable to breach of contract claims. *See* Tenn. Code Ann. § 28-3-109.

**PREJUDICE** Plaintiff's claims against Defendant Estate Ventures and Defendant Faith Management.

## III.    Motion for Summary Judgment

While Plaintiff has been trying to serve Defendants Estate Ventures and Faith Management, Defendants Wayne Mink and Chatham Village have been defending this lawsuit on the merits.  Defendant Chatham Village moved for summary judgment on March 26, 2024. (ECF No. 62.)  Plaintiff then amended her Complaint.  (ECF No. 64.)  Judge Christoff did not strike the Amended Complaint and, accordingly, recommended this Court deny without prejudice the Motion for Summary Judgment.  (ECF No. 96 at PageID 1946.)  Judge Christoff also recommended this Court allow Defendants an extension of 30 days of the date of this Order to file new dispositive motions.  (*Id.* at PageID 1947.)  Within a month of Judge Christoff's R&R, Defendants filed a new motion for summary judgment.  (ECF No. 105.)

Accordingly, the Court **DENIES WITHOUT PREJUDICE** the summary judgment motion (ECF No. 62) filed on March 26, 2024, as **MOOT**.  And the Court will allow Defendants Wayne Mink and Chatham Village to proceed on the Motion for Summary Judgment (ECF No. 105) filed on September 19, 2024.

## IV.    Order on Remaining Motions

For the reasons above, the Court is dismissing Defendant Estate Ventures and Defendant Faith Management from this lawsuit.  Accordingly, the Court **DENIES** Plaintiff's Motion to Extend the Service Deadline (ECF No. 102) and **DENIES** as **MOOT** Defendant Estate Venture's Motion to Quash (ECF No. 112).

## CONCLUSION

Having reviewed Judge Christoff's R&Rs de novo, the Court **ADOPTS** her R&R and

**GRANTS** Defendant Estate Venture and Defendant Faith Management's Motions to Dismiss.

Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's claims against

Defendant Estate Venture and Defendant Faith Management.  The Court also **DENIES**

**WITHOUT PREJUDICE** Defendant Chatham Village's Motion for Summary Judgment filed

on March 26, 2024.  And lastly the Court **DENIES** Plaintiff's Motion to Extend Service and

**DENIES** as **MOOT** Defendant Estate Venture's Motion to Quash.

  **SO ORDERED**, this 14th day of February, 2025.

        s/Thomas L. Parker

        THOMAS L. PARKER
        UNITED STATES DISTRICT JUDGE